IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EQUISTAR CHEMICALS, L.P., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-19-3757 |
| | § | |
| INDECK POWER EQUIPMENT CO., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

Equistar Chemicals, L.P. sued Indeck Power Equipment Company for breach of warranty, breach of contract, and negligence, based on alleged equipment-design and manufacturing defects and negligent service-technician work. (Docket Entry No. 1). Following a six-day bench trial, the court made findings of fact and conclusions of law and entered judgment in favor of Equistar. (Docket Entry Nos. 53, 55). Equistar has moved to recover its attorneys' fees and costs. (Docket Entry Nos. 56, 57). Indeck has moved to amend the court's findings of fact and conclusions of law under Rule 52(b), to amend the judgment under Rule 59(e), and, alternatively, for a new trial under Rule 59(a). (Docket Entry No. 58). The parties have exchanged briefs. (Docket Entry Nos. 59, 60, 61, 62, 63).

**I.      Indeck's Motion Under Rules 52(b), 59(a), and 59(e)**

   **A.      The Legal Standards**

For the court to grant Indeck the relief it seeks under Rule 52(b), 59(a), or 59(e), Indeck must show that the court committed a "manifest error of law or fact." *See, e.g.*, *Pounds v. Katy Indep. Sch. Dist.,* 730 F. Supp. 2d 636, 641 (S.D. Tex. 2010) ("[T]o alter or amend the judgment under Rule 59(e), [the moving party] 'must clearly establish either a manifest error of law or fact'"

(quoting *Rosenzweig v. Azurix Corp.,* 332 F.3d 854, 863–64 (5th Cir. 2003))); *Cooper v. Ocwen Loan Servicing, LLC*, No. 3:14-CV-2795-N, 2016 WL 4440485, at *2 (N.D. Tex. July 29, 2016) ("Rule 52(b)'s purpose is, generally, to correct manifest errors of law or fact." (quotation marks omitted)), *report and recommendation adopted*, No. 3:14-CV-2795-N, 2016 WL 4429248 (N.D. Tex. Aug. 22, 2016); *Hicks v. R.H. Lending, Inc.*, No. 3:18-CV-0586-D, 2020 WL 2065637, at *1 (N.D. Tex. Apr. 29, 2020) ("A motion for a new trial in a nonjury case . . . should be based upon a manifest error of law or mistake of fact, and a judgment should not be set aside except for substantial reasons." (quoting *Isystems v. Spark Networks Ltd.*, 2015 WL 13469855, at *1 (N.D. Tex. Jan. 13, 2015))).

A party may not use a motion under Rule 52(b), 59(a), or 59(e) to repeat previous arguments or raise arguments that could, and should, have been raised at trial. *See, e.g.*, *T. B. by & through Bell v. Nw. Indep. Sch. Dist.*, 980 F.3d 1047, 1051 (5th Cir. 2020) (a Rule 59(e) motion "cannot be used to raise arguments which could, and should, have been made before the judgment issued" (quotation marks omitted)); *Templet v. HydroChem Inc.,* 367 F.3d 473, 478–79 (5th Cir. 2004) (a Rule 59(e) motion "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment"); *Cooper*, 2016 WL, at *2 (a Rule 52(b) motion "should not be employed . . . to re-litigate old issues, to advance new theories, or to secure a rehearing on the merits").

**B.    Analysis**

Indeck asserts that the court made manifest errors of law when it concluded that:

(1) the Master Contract did not incorporate the terms of the Field Service Rate Sheet;

(2) the Master Contract imposed no duty on Equistar to dispute invoices promptly and in writing;

(3) Indeck was responsible for third-party Vega's charges to Equistar; and

2

(4) Indeck provided inefficient transportation services.

(Docket Entry No. 58 at 2).

Indeck largely repeats the arguments it made and the court rejected at trial. Indeck repeats its arguments that the terms of the Rate Sheet were integrated into the Master Contract, (*compare* Docket Entry No. 58 at 3 *with* Docket Entry No. 49 at 15); the Master Contract contained a condition precedent requiring Equistar to dispute invoices promptly in writing, (*compare* Docket Entry No. 58 at 6–12, *with* Docket Entry No. 44 at 21, 45, *and* Docket Entry No. 49 at 8); and Indeck is not liable for damages related to Vega's defective water bridles because Equistar exercised so much control over Vega that Vega stopped being Indeck's subcontractor, (*compare* Docket Entry No. 58 at 12–15, *with* Docket Entry No. 44 at 65, *and* Docket Entry No. 49 at 12, 18, 20). Indeck also presents arguments that could, and should, have been raised at trial, including that the Master Contract distinguished between disputing invoices and disputing work quality and that Equistar "collude[d]" with Vega to disadvantage Indeck. (Docket Entry No. 58 at 15). Those are insufficient bases for the extraordinary relief that Indeck seeks.

Indeck argues that the court misinterpreted Exhibit 75, which is an email from Greg Wassilkowsky, Indeck's director of engineering, to Aaron McKee, Equistar's manager for the Tuscola plant site. (Docket Entry No. 58 at 9–10). In the email, Wassilkowsky stated, in relevant part:

> As Lyondell has elected to hold back funds due to the back charge claims above [in McKee's email] ([]in clear conflict with our contract), Indeck will require full payment of the chamber extensions and back up water columns prior to their shipment. Indeck believes the current monetary hold back of $141,000.00 for the claims outlined in Mr. McKee's E-mail is excessive and obviously cannot continue to grow by arbitrarily refusing to pay for past onsite field service work, and again, this is not in accordance with our contract.
> . . .
> Indeck is requesting Lyondell to prepare a complete accounting of the claims so Indeck and Lyondell can come to a mutually agreeable resolution, before our technician returns to your site to complete your project.

3

(*Id.* at 10 (quoting Indeck Exh. 75)).  In its Memorandum and Order, the court cited Exhibit 75 as support for the finding that "Wassilkowsky . . . stated that Indeck would not pay for a service technician to continue working at the Tuscola plant unless Equistar paid all the amounts Indeck had invoiced Equistar, including amounts that Equistar disputed."  (Docket Entry No. 53 at 13–14). Indeck argues that, properly read, Exhibit 75 shows that Wassilkowsky demanded prepayment for two boiler components before shipping them.  (Docket Entry No. 58 at 10).

Indeck's argument does not establish that amendment or a new trial is warranted.  Indeck appears to argue that Exhibit 75 supports the conclusion that the Master Contract included a condition precedent that required Equistar to promptly dispute invoices in writing.  The court's conclusion that the Master Contract did not contain such a condition precedent was not based on, or affected by, Exhibit 75.  (*See* Docket Entry No. 53 at 25–26).  The court concluded that no condition precedent existed based on the language of the Master Contract and Texas law.  Even if the court misread Exhibit 75, it was not an error warranting relief under Rule 52(b), 59(a), or 59(e).

Indeck also argues that the court erred in determining that it did not provide efficient transportation services, because the record "contains no evidence as to what is a 'reasonable and usual or customary time' for transportation." (Docket Entry No. 58 at 16).  Perry Danniger Smith, Equistar's project manager for the boiler project, and Michael Holt, an Equistar engineer, credibly testified that Indeck delayed providing necessary customs paperwork for the boilers, which led to a five- or six-week delay in the boiler delivery.  (Docket Entry No. 53 at 23).  Marsha Forsythe, Indeck's president and chief executive officer, testified that Indeck did not delay the customs paperwork, but the court did not find her testimony credible on this point.  (*Id.* at 24).  Based on the credible testimony and other record evidence, the court found that Indeck delayed the customs

4

paperwork, which delayed the boiler delivery. That intentional delay violated Indeck's contractual obligation to provide "efficient" transportation services to Equistar.

Indeck has not met its burden of showing a manifest error of law or fact, and it is not entitled to the extraordinary relief that it seeks. Indeck's motion to amend the court's findings of fact and conclusions of law, to amend the judgment, and for a new trial, (Docket Entry No. 58), is denied.

## II. The Rule 54 Motion for Attorneys' Fees

Federal Rule of Civil Procedure 54(d)(2) permits the court to enter a postjudgment award for attorneys' fees. The party seeking a fee award must file a motion showing: (1) the judgment and the legal basis for the fee award; (2) the amount sought or a fair estimate of it; and (3) the terms of any fee agreement, if the court orders. FED. R. CIV. P. 54(d)(2)(B). The party seeking fees has the burden of showing entitlement to them. *Kinsel v. Lindsey*, 526 S.W.3d 411, 427 (Tex. 2017).

"In diversity cases[,] state law governs the award of attorney's fees." *Transverse, L.L.C. v. Iowa Wireless Servs., L.L.C.*, 992 F.3d 336, 344 (5th Cir. 2021) (quotation marks omitted). The court's Memorandum and Order awarded fees to Equistar under Chapter 38 of the Texas Civil Practice and Remedies Code, which allows fees for claims based on a contract, the performance of services or labor, or the furnishing of materials. (Docket Entry No. 53 at 36–37); TEX. CIV. PRAC. & REM. CODE § 38.001. Equistar's claims are based on a written contract and fit within those categories.

Equistar seeks $294,751.50 in attorneys' fees, supported by a declaration by Mark Waite, Equistar's lead counsel, and billing records. (Docket Entry No. 56-1 at 3–7, 20–44; Docket Entry No. 60 at 9). Equistar bases the $294,751.50 amount on the lodestar method of multiplying the

number of hours reasonably spent on a case by the reasonable hourly rates, with the result adjusted as needed. (Docket Entry No. 56 at 3–5); *Cruz v. Maverick Cty.*, 957 F.3d 563, 574 (5th Cir. 2020); *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998).

Equistar states that its attorneys worked 673.9 hours and charged hourly rates ranging from $190 for a senior paralegal to $640 for Waite, who is the managing partner of DLA Piper's Houston office. (*Id.* at ¶ 13; Docket Entry No. 60 at 3–9 (reducing the hours listed in Waite's declaration)). Waite states that, under the firm's agreement with Equistar, the rates it charged were 80% of the firm's customary hourly rates. (Docket Entry No. 56-1 at ¶ 20).

Indeck does not argue that the numbers of hours or the hourly rates are unreasonable. Instead, Indeck argues that Equistar's billing records fail to comply with Rule 54 and, as a result, "substantially impair" the court's reasonableness determination. (Docket Entry No. 59 at 1–2). Indeck makes three arguments: (1) Equistar failed to segregate the fees for recoverable claims from nonrecoverable claims; (2) Equistar failed to segregate fees incurred in a related, separate case; and (3) Equistar used "block billing." The court addresses each argument in turn.

### 1. Recoverable and Nonrecoverable Claims

Under Texas law, a party seeking fees must "segregate fees between claims for which they are recoverable and claims for which they are not." *Transverse,* 992 F.3d at 344 (quotation marks omitted). "The party seeking fees bears the burden of properly segregating them." *Id.* (citing *Merritt Hawkins & Assocs., L.L.C. v. Gresham*, 861 F.3d 143, 156 (5th Cir. 2017)). "An exception to the fee-segregation requirement exists 'when the fees are based on claims arising out of the same transaction that are so intertwined and inseparable as to make segregation impossible.'" *Id.* (quoting *Kinsel*, 526 S.W.3d at 427). For the exception to apply, the party seeking fees must show that "discrete legal services advance[d] both a recoverable and unrecoverable claim." *Id.* (quoting

*Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313 (Tex. 2006)). "Texas provides no general rule for determining when claims are sufficiently intertwined to come within the exception," and whether the exception applies is a "mixed question of law and fact." *Id.* (quotation marks omitted).

Equistar sued Indeck for breach of contract, breach of warranty, and negligence. Equistar prevailed on its breach-of-contract claims and on most of its breach-of-warranty claims, but it did not prevail on its breach-of-warranty or negligence claims based on excessive boiler vibration. (Docket Entry No. 53 at 2). Indeck argues that Equistar failed to segregate the fees related to its unsuccessful claims and that Equistar should either not recover any of its fees or have its fees reduced by 19%, which is the percentage of damages that Equistar did not recover. (Docket Entry No. 59 at 3–4). Equistar responds that its negligence claim was an alternative claim that required no separate evidence and minimal preparation. (Docket Entry No. 60 at 2).

At trial, Equistar presented evidence and testimony that applied to the excessive-vibration claims and other claims, as well as evidence and testimony that applied only to the excessive-vibration claims. (Docket Entry No. 43 at 24–29). Equistar's billing records show only 14.6 hours of work clearly related to Equistar's claims for negligence and breach of warranty based on excessive boiler vibration. (Docket Entry No. 56-1 at 21, 29, 36). That is 2.17% of Equistar's asserted fees. That does not appear to reflect the amount of work done for those claims. Equistar did not sufficiently segregate its nonrecoverable fees related to the excessive-vibration claims.

The failure to segregate fees does not preclude recovery. *Transverse*, 992 F.3d at 346 & n.37 (quoting *Kinsel*, 526 S.W.3d at 428). The Fifth Circuit recently stated that a district court inclined to reduce fees due to a failure to sufficiently segregate "can simply allocate as a percentage of total fees the amount that likely would have been incurred even if the unrecoverable claims were

7

not in the case, instead of requiring burdensome retrospective itemizations by claim." *Id.* at 347 (quotation marks and citations omitted). Based on the record, the claims, and the evidence and testimony at trial, the court concludes that at least 90% of Equistar's fees would have been incurred on the successful claims even if the unsuccessful excessive-vibration claims were not in the case. Equistar's fee award is reduced by 10%, to $265,276.4.

2. **Separate Litigation Fees**

Indeck argues that Equistar failed to segregate fees in this case from fees incurred in a related but separate case. (Docket Entry No. 59 at 4–9). Indeck identifies 15 entries in Equistar's billing records that are allegedly related to the separate but related case.[1] For 11 of those entries, Equistar responds that the fees are recoverable because: (1) they are for experts used in both cases; (2) the fees were already reduced by 50% before Equistar submitted its fee motion, because the fees were for services intertwined between the cases; and (3) the work described related solely to this case. (Docket Entry No. 60 at 3–9; Docket Entry No. 56-1 at ¶ 15). The court agrees with those explanations and concludes that the disputed fees are recoverable.

For four of the entries, Equistar argues that the fees are recoverable because they were based on work intertwined with work on the "same set of operative facts" as in the other case. (Docket Entry No. 60 at 4). That is not sufficient. A "common set of underlying facts" does not by itself make work and fees intertwined. *Transverse*, 992 F.3d at 344. Rather, Equistar must show that the disputed time entries were for legal work that advanced both recoverable and nonrecoverable claims. *Id.* That is, Equistar must show that the work described advanced both this case and the separate case.

---

[1] Indeck originally identified 49 entries that were related to the other case. Equistar responded that 34 of those entries were inadvertently included and reduced the fees sought by $33,848.50 as a result. (Docket Entry No. 60 at 3).

8

The four disputed entries are set out below.

| | | |
|---|---|---|
| 10/10/18 | Review and analyze underlying documents, both as to the PLC access issue and as to issues with boiler operation and repair, and prepare preliminary chronology of key events. | $1,920.00 |
| 10/12/18 | Finalize review of underlying documents relating to both the PLC access issue and issues relating to boiler operation and repair, and preparation of preliminary chronology of same; forward same to Ms. Ringel-Walton for her information. | $704.00 |
| 10/16/18 | Review and analyze status of PLC issues and additional boiler issues at the plant. | $192.00 |
| 10/25/18 | Prepare for and participate in extended conference call with Ms. Ringel-Walton and the Tuscola site regarding status of PLC issues and boiler operation. | $640.00 |

(Docket Entry No. 56-1 at 21).

These entries describe work related to both "the PLC access issue," which was central to the other case, and work related to "boiler operation and repair" issues, which were central to this case. Although the work may have arisen from the same or overlapping core case facts, Equistar has not shown that all the work described in these entries advanced recoverable claims in this case, as well as in the other case. The court reduces these fees by 50%, which decreases Equistar's fee award by $1,728.

Indeck next argues that, because the complaint in this case was drafted on September 19, 2019, Equistar should recover only 50% of the fees it incurred for work before that date. (Docket Entry No. 59 at 8). Indeck argues that the work done by Equistar's counsel before the complaint was drafted was either for the related, separate case, or intertwined between the two cases, which requires reducing those fees by half. (*Id.* at 8–9). Equistar responds that the records show work done separately in this case. (Docket Entry No. 60 at 2–3).

Many of the time entries before September 2019 show work done specifically for this case. For example, one time entry for October 23, 2018, reads: "Reviewed correspondence from Indeck on the boiler vibration issue; review master agreement sections cited by Indeck; confer with M.

9

Waite on response, site visit, and strategy for suit." (Docket Entry No. 56-1 at 21). Additionally, many of the entries that relate to both cases have been reduced by 50% by Equistar or by the court. Waite states in his declaration that the firm reduced the asserted fees related to e-discovery and two visits to Equistar's Tuscola plant by 50% because the work served both this case and the related case. (*Id.* at ¶ 15). According to Waite, that decreased Equistar's fee award by $43,200. (*Id.*). Combined with the reductions discussed above, the entries related to both cases have been reduced by 50%.

For the period before September 19, 2019, the court found only two other time entries related to both cases that have not yet been reduced. Those entries describe work related to both "PLC issues" and boiler issues. (*Id.* at 21–22). Reducing those entries by 50% decreases Equistar's fee award by another $1,035.

### 3. "Block Billing"

Indeck argues that Equistar should have its fee award further reduced because its attorneys used block billing. "'Block billing' is a 'time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks.'" *Glass v. United States*, 335 F. Supp. 2d 736, 739 (N.D. Tex. 2004), *amended in part*, No. 3:00-CV-1543-L, 2004 WL 2189634 (N.D. Tex. Aug. 26, 2004) (quoting *Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1534 n.15 (10th Cir. 1996)). Because block billing may make it harder to determine whether fees are reasonable, courts have reduced fee awards by up to 30% in response to block billing. *See Barrow v. Greenville Indep. Sch. Dist.*, No. 3:00-CV-0913-D, 2005 WL 6789456, at *5 (N.D. Tex. Dec. 20, 2005) (collecting cases), *aff'd*, No. 06-10123, 2007 WL 3085028 (5th Cir. Oct. 23, 2007). Indeck argues that the block billing should lead the court to reduce the fee award by 30%.

The use of block billing does not warrant reducing Equistar's fee award, because the time entries contain enough information for the court to determine the reasonableness of the hours spent. *See United States ex rel McNeil v. Jolly*, 451 F. Supp. 3d 657, 673 n.45 (E.D. La. 2020) ("[T]he Court will not reduce [a party's] hours for block-billing because the entries contain sufficient information for the Court to determine that the hours were reasonably expended."); *RSDC Holdings, LLC v. M.G. Mayer Yacht Servs., Inc.*, 429 F. Supp. 3d 238, 244 (E.D. La. 2019) ("While the firm did employ block billing to a limited degree, those fee entries do not raise concerns about the reasonableness of either the nature or duration of the services rendered, but instead reflect an appropriate billing judgment."). For example, the entry for January 14, 2019, shows 12 billed hours for the following: "Prepare for site visit and related meetings at the plant; attend extended visit; work on notes and issues following-visit; begin travel back to Houston." (Docket Entry No. 56-1 at 22). It is reasonable that those tasks would take 12 hours in total. A further reduction of Equistar's fee award is not needed.

The court awards Equistar attorneys' fees in the amount of $262,513.40.

### III. The Rule 54 Motion for Costs

Equistar seeks to recover $12,534.07 in litigation costs. (Docket Entry No. 57). Rule 54(d) "creates 'a strong presumption' in favor of awarding costs to a prevailing party, and 'a district court may neither deny nor reduce a prevailing party's request for costs without first articulating some good reason for doing so." *U.S. ex rel. Long v. GSDMIdea City, L.L.C.*, 807 F.3d 125, 128 (5th Cir. 2015) (brackets omitted) (quoting *Manderson v. Chet Morrison Contractors, Inc.*, 666 F.3d 373, 384 (5th Cir. 2015)). Indeck does not dispute the cost amount or Equistar's entitlement to costs. The court awards Equistar costs in the amount of $12,534.07.

## IV. Conclusion

Indeck's motion to amend the court's findings of fact and conclusions of law, to amend the judgment, and for a new trial, (Docket Entry No. 58), is denied. Equistar's motion for attorneys' fees, (Docket Entry No. 56), is granted, as modified, and its motion for costs, (Docket Entry No. 57), is granted. Equistar may recover $262,513.40 in attorneys' fees and $12,534.07 in costs from Indeck.

SIGNED on June 3, 2021, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge